## Laughlin *versus* Clawson.

In an action for malicious prosecution, probable cause is a question of law; and if specific instructions to that effect are demanded, it is error not to give them according to the facts of the case.

Such action cannot be sustained, if an officer of the state, appointed because of his legal learning, considers that a given state of facts is sufficient evidence of probable cause.

Error to the Common Pleas of *Indiana county.*

This was an action on the case to recover damages for malicious prosecution. On the 11th April, 1853, James W. Laughlin made information against John Clawson, charging him with the larceny of certain gold coin. A bill of indictment was laid before the grand jury, the prosecutor was examined, and the bill ignored. Laughlin alleged that he had lost the coin on the public road leading from Jacksonville to his residence; that it was tied up in a linen rag, that Clawson came along the same road that evening, found the money, and appropriated it to his own use. It appears that the parties had had, the same day, some difficulty about the payment of taxes. Clawson, on his way home that evening, called upon Laughlin to get him to settle his taxes. Laughlin alleged that he then asked Clawson if he had found any money on the road; that an evasive reply was given, and finally Clawson denied having found the money. In making change, Clawson is represented to have pulled something out of his pocket, which he threw behind him. This was afterwards picked up, and was said to have been the same rag in which the money was tied. It appears that on the next day, Laughlin was out hunting the money, and said he did not know where he lost it. There was some discrepancy in his statements as to the description of the money lost; and some time afterwards, gold coin of different denominations was found in Jacksonville. The district attorney (Mr. Paige) was consulted early in the proceedings instituted against Clawson. After the grand jury ignored the bill, Clawson brought this action.

The counsel of defendant requested the instruction of the court upon the following point, *inter alia:*—

That if the jury believe the testimony on the part of defendant, there were such reasonable grounds of suspicion as would constitute probable cause for the prosecution.

Which the court answered, as follows:—

It is urged that probable cause is a mixed question of law and fact. The authorities on this subject must be reasonably construed. They mean that the question of probable cause must not be left loosely to the jury to decide, upon their unskilled conceptions of the law. *It is surely asking a court to go beyond judicial*

[Laughlin v. Clawson.]

*function, when they are called upon to say that a given state of facts is sufficient to create a suspicion of guilt in the mind of a reasonable and prudent man.  This seems one of those duties which fall peculiarly within the province of the jury.*  It is the duty of the court to state what probable cause is, to fix the standard to which the evidence shall come, to announce what the law demands as establishing probable cause; *but it remains for the jury to determine what facts are proved, and also whether those facts are sufficient to found a reasonable suspicion of guilt in the mind of a prudent man.*  This latter cannot surely be a question of law, upon which the court must give a binding instruction.  From its nature it involves an inquiry of fact, and cannot be determined by the application of any principle of law known to us.

"At the same time that we decline giving a binding instruction on this subject, we feel free to give our opinion upon the facts, with which the jury may agree or disagree as they see fit.  We think if the jury believe that Laughlin and wife testified truly before the grand jury, there was reasonable ground of suspicion, sufficient to constitute probable cause.  This opinion we found on the belief of the jury: 1st, that Laughlin actually lost the money on the road; and 2d, that Clawson had in his possession, at Laughlin's house, the identical rag in which the money was wrapped when lost. The jury will consider all the testimony adduced by plaintiff, tending to show that defendant's story was a fabrication—some evidence that he did not describe the money correctly at first, or gave a different description of it lately; and the evidence of money corresponding in kind to that lost, being recently found in Jacksonville.  We suggest that this last circumstance should be considered with caution, as it is of a nature easily manufactured."

The jury found for the plaintiff, $6.71.

The errors assigned, were to those parts of the answer which are italicised; and also, that the court erred in submitting as a question of fact to the jury, whether the facts as proved amounted to probable cause; and in not instructing the jury whether the facts submitted to them to find, did or did not amount to probable cause.

*Drum* and *Todd*, for plaintiff in error.—Probable cause is a question of law: Weinberger *v.* Shelly, 6 *W. & S.* 342; Maxwell *v.* Beltzhover, 9 *Barr* 137; Travis *v.* Smith, 1 *Barr* 237; Le Maistre *v.* Hunter, *Bright. R.* 494.

*Foster* and *Stewart,* for defendant in error.—The question of probable cause should be submitted on the defendant's belief of plaintiff's guilt or innocence: Seibert *v.* Price, 5 *W. & S.* 438.

[Laughlin *v.* Clawson.]

The opinion of the court was delivered by

LOWRIE, J.—We should like very well to let this little judgment stand, for fear, as the plaintiff below says, the defendant may "go further and fare worse;" but we cannot do it. The learned judge of the Common Pleas very properly regarded the testimony of the prosecutor as furnishing sufficient evidence of probable cause, if believed; and yet he refused to give a binding instruction to this effect.

On both principle and authority we think that the instruction ought to have been given. General instructions were very properly given, but the defendant demanded specific instructions according to his very case, and he was entitled to them. This is sufficiently proved by the authorities cited in the argument. And there are very plain principles of justice that demand this rule. If the officers of the state, who are appointed on account of their legal learning, consider that a given state of facts is sufficient evidence of probable cause, how can the private citizen be said to be in fault in acting upon such facts, and how can the state condemn him to damages for so doing? To decide so is to use the machinery of government as a trap to ensnare those who trust in government for such matters, and who ought to trust in it. If such officers make a mistake, it is an error of government itself, and government cannot allow the citizen to suffer for his trust in its proper functionaries. There are cases where the judgment of the lower grades of officers (1 *Wils.* 232; 15 *Mass.* 243; 3 *Ep.* 7, 165; 1 *Greenl.* 138,) and even of those who are not properly officers at all (25 *State R.* 275; 8 *Miss.* 339), is sufficient to establish probable cause. If the party prosecuted should suffer from such mistakes, he must bear it as one of those accidents for which in the nature of things there can be no redress, for the government cannot make the prosecutor suffer for the injuries which it has itself through mistake committed.

This would be the injustice of direct action, and not of mere omission or defectiveness. Besides this, in the trial of a cause it is always the duty of the court to pronounce the law arising on a given state of facts. And this again is only an exemplification of the principle of good sense that prevents us from applying to a schoolmaster or a preacher to instruct us in the arts of tanning or glass-blowing, or to work at those trades for us.

Judgment reversed and a new trial awarded.