RUTH ALEXANDER *v.* SOPHIE CRESSATY.

No. 2020.

ARGUED JANUARY 25, 1932.          DECIDED MARCH 3, 1932.

PERRY, C. J., PARSONS, J., AND CIRCUIT JUDGE WATSON
IN PLACE OF BANKS, J., UNABLE TO ATTEND
ON ACCOUNT OF ILLNESS.

282

OPINION OF THE COURT BY PARSONS, J.
(Perry, C. J., dissenting.)

This is an action in tort for malicious prosecution. Plaintiff's complaint charges in part and in effect that on or about March 23, 1928, in Honolulu, the defendant maliciously and without probable cause, caused the plaintiff, to the latter's consequent injury, to be indicted, arrested and prosecuted on a false charge of forgery and passing a forged writing. Damages are prayed in the sum of $75,500. Issue was joined by a general denial and the case proceeded to trial before a jury. The plaintiff gave evidence to the following effect: Plaintiff is a physician and surgeon and has practiced her profession in Hawaii since 1915. In 1926 she rendered professional services to Mrs. Balish, the defendant's sister, for which she charged Mrs. Balish a fee, believed by plaintiff to be reasonable, in the sum of $175. Several weeks later, in response to her bill for that amount, plaintiff received a telephoned complaint that the bill was too high. Plaintiff, receiving no notice of further attention to her monthly statements of account, seven months later drove over to Kailua and called on Mrs. Balish and Mrs. Cressaty. Quoting from the transcript of Dr. Alexander's testimony on direct examination: "Q Did they make any promise to pay you? A Mrs. Cressaty said she would pay one hundred dollars on the following Tuesday. Q Was anything else said? A She said I need not try to get any more than that, and I need not sue because her sister had nothing, and I would get no more than one hundred dollars. Q Did they make the payment of $100 on the following Tuesday? A Yes. Q Was it in cash or by check? A By check."

There was further evidence to the effect that the check referred to was drawn upon the Bank of Hawaii, Limited, for one hundred dollars, payable to the order of the plaintiff, signed by the defendant, and dated September 2, 1926. In the lower left-hand corner of the check were written the words "paid in full." Plaintiff drew a line through the words "paid in full" and gave to the man who had brought the check to her office a receipt reading as follows: "Received on account $100; balance due $75," which the said messenger then read. There is testimony that Mrs. Cressaty thereafter admitted that the receipt above referred, to was delivered to her on the street corner below Dr. Alexander's office by the man who had taken her check to Dr. Alexander. Shortly after receipt of the check plaintiff endorsed and cashed the same at the Bank of Hawaii.

Six or eight months later plaintiff obtained from defendant, on two days' approval, a Persian rug priced $200. Plaintiff offered to buy this rug for $125 cash, plus a credit of $75 balance due for professional services above named to Mrs. Balish. This offer was refused. The rug was not returned and Mrs. Cressaty brought action in assumpsit for $200 against Dr. Alexander in the district court on account of the same. Judgment was entered therein May 19, 1927, in favor of Mrs. Cressaty for the amount sued for. In October following Dr. Alexander was examined as to her property upon supplemental proceedings in the district court. No property liable to execution was disclosed. At the examination Mrs. Cressaty's attorney said: "We will see what the grand jury can do."

In March of the following year (1928) the judgment of the district court was still unpaid and it remained unpaid until April 12, 1928. On March 23, 1928, an indictment was found by the grand jury of the first circuit

charging Dr. Alexander in the first count with forging the check above named "by then and there unlawfully, feloniously, deceptively and fraudulently striking out and running a line through the words upon said check 'Paid in full,' with intent in her, the said Dr. Ruth Alexander, to defraud, deceive and prejudice another, to-wit: Sophie Cressaty, in some right of property." The second count of said indictment charged Dr. Alexander with passing said alleged forged check with "intent in her, the said Dr. Ruth Alexander, to defraud, deceive and prejudice another in some right of property."

Defendant was then arrested and, in the custody of a police officer, was taken publicly to the court room and later to the sheriff's office where she was subsequently released upon giving a bond in the sum of $1000. About one week later Dr. Alexander was indicted for perjury in connection with her testimony at the supplemental examination before the district magistrate to the effect that she owned no property not exempt from execution. This perjury indictment was later nolle prossed.

On March 26, 1928, the plaintiff herein was arraigned in the circuit court upon the forgery charge. On April 26, 1928, she pleaded not guilty thereto and the case proceeded to trial before a jury, resulting, on April 30, 1928, in a verdict of acquittal. Mrs. Cressaty was a witness against Dr. Alexander at the trial.

Testimony with which we are not presently concerned was then introduced in the case at bar as to the injury suffered by the plaintiff by reason of said prosecution. The plaintiff having rested the defendant filed a written motion for a judgment of nonsuit based upon the following grounds, namely: (1) "That the plaintiff has failed to establish by the evidence introduced herein facts sufficient as a matter of law to entitle her to recover a judgment in her favor and against the defendant;" (2) "that

the plaintiff has failed to establish by the evidence that the defendant in any way instigated or set on foot the prosecution of the plaintiff referred to and set forth in plaintiff's complaint;" (3) "that the plaintiff has failed to establish by the evidence that the defendant either maliciously or otherwise, instituted or caused to be instituted, continued or caused to be continued, aided or abetted the prosecution of the plaintiff for the crime of forgery as set forth and alleged in the plaintiff's complaint;" (4) "that the plaintiff has failed to prove by the evidence that she was prosecuted maliciously or without probable cause or otherwise, or at all by the defendant by reason of any of the matters or things set forth and alleged in plaintiff's complaint herein;" (5) "that the plaintiff has failed to establish by the evidence herein such a case which could, as a matter of law, sustain a verdict in her favor and against this defendant;" (6) "that the plaintiff has failed to prove by the evidence herein that the proceeding complained of in her complaint herein was instituted without probable cause, but to the contrary it affirmatively appears from the plaintiff's evidence that probable cause for such proceeding did exist."

Upon presentation by defendant's attorney of the foregoing motion the transcript shows the following proceedings: "Mr. Dwight" (plaintiff's attorney): "I have already given the court my authorities, my contention being there is sufficient evidence before the jury from which the jury can draw the conclusion that the prosecution was instigated by Mrs. Cressaty, the defendant, but at this time I move to reopen for the purpose of offering additional evidence. The Court: In order to rule on the request to reopen I want to know something of the facts to determine whether or not it would be futile to reopen. Mr. Dwight: I offer to prove that Mrs. Cressaty on the

day that the indictment was found, or day following that, admitted that she instituted or was responsible for the institution of the criminal prosecution against Mrs. Alexander. I also offer to prove that her counsel presented to the city and county attorney the check and a transcript of some proceeding at the police court, upon which, as the attorney for Mrs. Cressaty, he requested that the plaintiff in this case be indicted for forgery and for passing a forged paper. The Court: Did you intend to connect up the alleged acts of the attorney with anything connecting Mrs. Cressaty with instigating or encouraging the attorney in connection with that? Mr. Dwight: We have her admission that she did it. I offer further to prove that she justified her action— The Court: To what extent would this alleged admission go?. Simply a statement after the fact? Mr. Dwight: It is true it is a statement after the fact, but it relates to the fact. The Court: What is the nature of the statement you expect to prove? Mr. Dwight: I expect to prove by this witness that when this article appeared, that the grand jury had indicted Mrs. Alexander, that Mrs. Cressaty called at the home of this woman and this woman asked her what she meant by prosecuting Mrs. Alexander, and she admitted she was prosecuting Mrs. Alexander and she would explain it. That this witness hung the 'phone up on her, and within five or ten minutes Mrs. Cressaty called at the home of this witness and attempted again to justify her action, at which time the conversation took place from the gate up into the house, and this witness told her to go and get out; she didn't want to hear anything about it, and Mrs. Cressaty then said, 'Well, she is a big crook anyhow,' and this witness ordered her off the premises. The Court: In connection with anything Mrs. Cressaty did, in connection with the county attorney's office or grand jury? Mr. Dwight: That was in reference to the

indictment that was gotten out against Mrs. Cressaty. The Court: Did she appear before the grand jury? Mr. Dwight: Mrs. Cressaty did not appear before the grand jury. She doesn't have to appear before the grand jury. The Court: Or any interviews with the county attorney? Mr. Dwight: It is not necessary for her to interview the county attorney, if her attorney. interviews the county attorney. We have the interview by her attorney with the county attorney, plus the defendant's own admission that she instituted the proceedings. * * * I may add that I only discovered the witness this morning." After argument and submission of the motion to reopen the case the court ruled as follows: "The record in this case is now upon a motion to dismiss, or motion for nonsuit, and records and ruling thereon, and motion on behalf of the plaintiff to reopen on grounds already stated in the record. The facts or alleged facts counsel is prepared to prove are not sufficient, in the judgment of the court, to vary the ruling of the court on motion for nonsuit, and the court will, therefore, deny the motion to reopen, and sustain the motion for nonsuit, on the ground there is insufficient evidence in the record or in connection with any offer of proof to show sufficient facts to go to the jury, that the defendant in this case instigated a criminal prosecution or procuring of the indictment within the purview of the law as to malicious prosecution; and secondly, that even if there were slight evidence in connection with the proof or in connection with any matters contained in the offer of proof to warrant a jury to consider the question of instigation or lack of instigation, there is, as a matter of law, no evidence in the case or in the offer of proof sufficient to justify the conclusion of probable cause, which is one of the elements of burden of proof which is upon the plaintiff. The court, therefore, grants the motion for nonsuit and dismisses the case."

The court thereafter filed a written decision and entered judgment in conformity with the oral ruling above quoted. The case is before us upon the plaintiff's bill of exceptions to said rulings and decision.

In denying plaintiff's motion to reopen the case for the introduction of new evidence the trial court did not base its ruling upon procedural irregularities on the part of the plaintiff nor upon defects in the *form* of the motion, nor did it purport to be acting in the exercise of its discretionary powers. The motion was denied solely upon the ground of the insufficiency in *substance* of the evidence thus sought to be introduced. It was held that such evidence was insufficient to be submitted to the jury upon the question of the instigation by the defendant of the forgery charges against the plaintiff. The proffered evidence thus excluded was to the effect that defendant admitted that she instituted or was responsible for the institution of the criminal prosecution of Dr. Alexander and that defendant's counsel had presented to the city and county attorney the check and transcript of proceedings in the police court, upon which said counsel had requested that the plaintiff be indicted for forgery and for passing a forged paper.

Counsel for defendant argues that because of procedural irregularities and defects in the motion to reopen the latter was unsustainable and that therefore the order of the court denying the same, even if based upon wrong reasons, should be sustained on exceptions. It is doubtful if the rule thus invoked is applicable to the facts above recited, but a decision upon that point is rendered unnecessary by reason of the fact that in passing upon the motion for a nonsuit the trial court considered with the evidence in the case the proffered testimony above referred to and held the same in its entirety insufficient to be submitted to the jury upon the questions of institution

of proceedings by defendant and want of probable cause. This ruling is before us for review upon plaintiff's exception number 2.

1. Was the evidence thus introduced and the evidence thus proffered sufficient as a whole to go to the jury upon the question of institution of the forgery charge by the defendant? We think that said evidence was sufficient for the purpose named. Divorced from the question of reopening the case, proof of the admission of defendant in the premises would have been admissible, subject, of course, to cross-examination of the plaintiff's witnesses and to denial or explanation by the defendant, and the same is true as to the alleged acts above set forth of defendant's counsel. If defendant prior to the indictment of plaintiff had placed all the facts fully and fairly before the city and county attorney, and the latter, acting exclusively upon his own judgment, had instituted the criminal prosecution, proof of those facts might have been a defense to the charge of instigating the prosecution as it would have been to the allegations of malice and want of probable cause. It is not necessary for us to decide that point for the reason that the proffered proof did not of necessity carry with it the implication of such an explanation. To prove the allegations of plaintiff's complaint that the criminal proceedings were instituted by the defendant it was not necessary to show that the defendant personally urged the city and county attorney to begin proceedings or that she appeared as a witness before the grand jury or that she gave false testimony at the trial. "One who sets the machinery of the criminal law in motion causes the 'prosecution,' as that term is used in the law of malicious prosecution." *Syllabus* of *Eastman* v. *The Leiser Co.,* 148 Minn. 96, 181 N. W. 109. "No particular method of proof is necessary to connect the defendant with the prosecution alleged to have been

instituted by him. Thus it has been held that to show that the defendant instigated the prosecution, it may be proved that he employed counsel therefor, or gave instructions or paid expenses, or procured witnesses, or stated that he had put the plaintiff in the penitentiary, or that the defendant was in any way active in forwarding the suit." 18 R. C. L. pp. 18, 19, § 8, citing in foot note 1, *Bitting* v. *Ten Eyck*, 82 Ind. 421, 42 Am. Rep. 505. "The fact that defendant originated or continued the proceedings complained of may be shown by the record, but this is not necessary. Such fact may be shown by evidence dehors the record. Circumstantial evidence is admissible to show that defendant originated the prosecution." 38 C. J., p. 484, § 167e. "A request to withdraw the case from the jury is properly refused where there was evidence of an admission by defendant that he had directed the suing out of the verdict." 38 C. J., p. 509, § 200(8), citing *Mertens* v. *Mueller*, 122 Md. 313, 89 Atl. 613.

2. Was the evidence thus introduced and thus proffered sufficient to sustain a finding of want of probable cause? "The question as to what amounts to probable cause is one of law in a very important sense. It is therefore generally the duty of the court, when evidence has been given to prove or disprove the existence of probable cause, to submit to the jury its credibility, and what facts it proves, with instructions that the facts found amount to proof of probable cause, or that they do not. A seeming exception to this rule may grow out of the nature of the evidence, as when the defendant's belief of the facts which are relied on by plaintiff to prove want of probable cause is a question involved. What that belief was is always a question for the jury." *Syllabus,* §§ 3, 4, of *Stewart* v. *Sonneborn,* 98 U. S. 187.

The question of probable cause thus has two aspects. Apropos of the first aspect: Whether or not the drawing

of a line through the words "paid in full" on Mrs. Cressaty's check for her sister's debt, in the presence of Mrs. Cressaty's messenger, in the circumstances shown in the testimony and in any view of the same, constitutes in law the offense of forgery, has not been argued and need not be decided. In the second aspect: Mrs. Cressaty's belief, on March 23, 1928, the date of the indictment, of the facts relied on to prove forgery by Dr. Alexander more than eighteen months theretofore, was a proper subject of inquiry by the jury—provided there was sufficient evidence on that subject before the jury upon which to base a finding. One of the essential facts in the forgery case was the *criminal* intent of Dr. Alexander.

Forgery is defined by section 4211, R. L. 1925, as "the fraudulent making or altering a writing, with the intent to deceive another and prejudice him in some right." The indictment charged that Dr. Alexander altered the above-named check in the particulars named "with intent * * * to defraud, deceive and prejudice * * * Sophie Cressaty in some right of property." If sufficiently presented by the evidence in the case at bar, the intent or absence of intent of Dr. Alexander as to fraud, deception and prejudice in the alteration of the instrument, and the belief of Mrs. Cressaty eighteen months after that event, as to such intent or absence of intent, thus became a proper subject of inquiry by the jury. As above set forth, there was evidence that the alteration was made openly, in the presence of Mrs. Cressaty's messenger, and that the latter was given a receipt for $100 "on account" with a statement that there was still due a balance of $75, which receipt he promptly delivered to Mrs. Cressaty in person. Much of the evidence which followed, as above recited, bears circumstantially upon the question of criminal intent, or absence of the same, on the part of Dr. Alexander and of knowledge of facts on the part of Mrs. Cressaty,

from which a finding by the jury of the latter's belief or want of belief in the premises could legally have been based; much of it bears also upon the question of malice. In this view it was error to remove said evidence from the jury's consideration by order, decision and judgment of nonsuit.

For the reasons above set forth exceptions two and three are sustained, the judgment is reversed, the cause is remanded and a new trial is granted.

*A. Withington* (*Robertson & Castle* and *C. B. Dwight* on the briefs) for plaintiff.

*J. L. Coke* (*Coke & Crozier* on the brief) for defendant.

DISSENTING OPINION OF PERRY, C. J.

It seems to me, upon reason, that when a person makes a full, true and correct statement of the facts of a transaction to the city and county attorney and leaves it to that official to say whether upon those facts the offense of forgery has been committed by another and to decide whether the matter should be presented to the grand jury for investigation and for indictment and when the complainant does not appear before the grand jury and appears, in response to a subpoena, before the trial jury and there testifies solely to the truth, the complainant cannot properly be held liable in damages in an action for malicious institution or prosecution of the criminal proceedings, even though the accused is acquitted and even though it appear that the county attorney, in presenting the matter to the grand jury, proceeded upon an erroneous theory of the law. While there is some conflict in the authorities on this point, well reasoned cases support this view. "It is well settled that, if the complaint places all the facts fully and fairly before the proper official, he is not liable in damages, if such official, acting exclusively upon his own judgment, institutes a criminal prosecution

not justified by such facts." *Cox* v. *Lauritsen,* 126 Minn. 128, 131, 132.

"The principles governing the rights and liabilities of the parties to an action for malicious prosecution are the result of a compromise between the right of the individual to be free from arrest or prosecution upon a charge of which he is innocent and the right of the community to be protected from crime. And one of these principles is that if a person discloses fairly and truthfully to the officer, whose duty it is to detect crime, all matters within his knowledge which, as a man of ordinary intelligence, he is bound to suppose would have a material bearing upon the question of the innocence or guilt of the person suspected, and leaves it to the officer to act entirely upon his own judgment and responsibility as a public officer, as to whether or not there shall be a criminal prosecution, and does no more, he cannot be held answerable in an action for malicious prosecution, even if the officer comes to the wrong conclusion and prosecutes when he ought not to do so. Such a person does no more than his duty; and to hold him answerable in an action for malicious prosecution for the result of the mistake or misconduct of the officer would be to make the division line of compromise between the right of the individual to his liberty and the right of the public to protection trench too far upon the domain of the latter." *Burnham* v. *Collateral Loan Co.,* 179 Mass. 268, 274.

"Generally it may be said that a prosecuting officer is charged with the duty of determining when to commence a particular prosecution, and when to discontinue it. He stands upon a different footing from a defendant, who goes to a justice of the peace, swears out a warrant, and directs the prosecuting officer to see to its execution. The county attorney in this state, not only directs under what conditions a criminal action shall be commenced,

but from the time it begins until it ends his supervision and control is complete, limited only by such restrictions as the law imposes. As is said by the superior court of Pennsylvania, in *Laughlin* v. *Clawson*, 27 Pa. 330: 'If the officers of the state * * * consider that a given state of facts is sufficient evidence of probable cause, how can a private citizen be said to be in fault in acting upon such facts, and how can the state condemn him to damages for so doing? * * * If such officers make a mistake, it is an error of government itself, and the government cannot allow the citizen to suffer for his trust in its proper functionaries.' If, therefore, a prosecuting officer incorrectly determines that certain facts given to him constitute a crime, and proceeds to set on foot the necessary action, the informant is not liable, because the fault is not his, but is that of the officer." *Halladay* v. *Bank*, 66 Mont. 111, 118. See also 38 C. J. 394-397.

Both the grand jury and the city and county attorney are parts of the law enforcement machinery of this jurisdiction in cases of forgery as well as other cases. The city and county attorney is presumed to know the law and it is his legal duty to decide for himself whether upon the facts called to his attention a crime has been committed and whether a grand jury would be justified in indicting. The grand jury in its turn acts upon evidence submitted to it. It is not required or authorized to find an indictment merely because an individual makes a complaint. If the city and county attorney erroneously advises the grand jury that upon the facts truthfully submitted to him by the complainant a crime has been committed, that is the error of the prosecuting official, for which the complainant ought not to be held liable.

In the case at bar it is clear that prior to the presentation of the motion for a nonsuit no evidence whatever had been adduced tending to show that the defendant

had instigated the institution of the criminal proceedings. In asking for leave to reopen the case so as to cure that defect, the attorney for the plaintiff made it clear, in answer to the questions of the judge presiding at the trial, that the defendant did not testify or appear before the grand jury or make any statement whatever to the prosecuting attorney and that the defendant's attorney presented to the prosecuting attorney the check and a transcript of proceedings had in the district court. There was no offer to prove what the defendant's attorney said to the county attorney and it cannot be presumed that he made any false or misleading statement. There was no offer to prove that the defendant's attorney expressed any opinion concerning the law of the subject to the prosecuting attorney or that the prosecuting attorney in presenting the matter to the grand jury did not act solely upon his view of the law applicable to the facts which had been stated to him by the defendant's attorney. It is true that the plaintiff's attorney offered to prove an admission by the defendant to a third person that "she instituted or was responsible for the institution of the criminal prosecution" and that she was "prosecuting" the plaintiff. This, however, was an offer to prove a mere conclusion. Whether the defendant instituted the criminal proceeding, in such a way as to create a liability to the plaintiff for damages, was purely a question of law to be determined upon facts. What those facts were there was no offer to prove, except as already stated. The burden was upon the plaintiff to prove each and all of the essential elements of an action for malicious prosecution. One of those elements was that the defendant instigated the criminal proceedings under circumstances creating a liability in her for damages. That burden, in my opinion, was not successfully maintained, even assuming that the proof offered by the plaintiff was before

the court.

Under this view it is unnecessary to consider whether there was evidence of want of probable cause for accusing the plaintiff of the crime of forgery and whether the motion to reopen the case should have been denied for the reason that it was unsupported by affidavits.

In my opinion the motion for a nonsuit was correctly granted and the exceptions should be overruled.